(Decided May 26th, 1865.)

ALEXANDER WILSON *vs.* ISAAC N. WILSON and others.

MULTIFARIOUSNESS: PLEADING IN EQUITY: PRACTICE IN COURT OF APPEALS.—Where a bill in equity prayed that A and B, as administrators, might be compelled to account for the whole personal estate of their intestate, and for a decree annulling and setting aside a decree and sale, under which A, one of the administrators, claimed certain real estate of the

intestate, B, the other administrator, not being charged with having anything to do with the transactions on account of which said decree and sale were sought to be impeached—HELD:

1st. That things of distinct natures cannot be introduced into a bill against two or more, unless combination is charged; and then, if the combination is denied by the answer, the bill is demurrable.

2nd. That in this case the bill was multifarious, and there being no charge of combination, it was demurrable.

3rd. That in conformity with the precedents in *White, et al., vs. White*, 5 *Gill*, 359, and *Griffin & Lee, vs. Merrill*, 10 *Md. Rep.*, 373, the bill must be dismissed, but without prejudice and without costs.

APPEAL from the Circuit Court of Baltimore city.

The bill in this case was filed on the 10th of January 1860, by the children of William H. Wilson, deceased, alleging that their father died intestate in the year 1845, seized and possessed of certain real estate in Cecil county, and of certain personal estate; that soon after his death, one Alexander Wilson, brother of the deceased, pretending great friendship and interest for his deceased brother's widow and infant children, (the eldest of whom was then about nine years of age,) procured the consent of the said widow that letters of administration on the personal estate of the said deceased should be issued to him, the said Alexander, and the said widow jointly, alleging that he would transact all the business and administer the said estate in the best manner possible for the interest of the widow and children, and without giving her any trouble; that he so inspired the said widow with trust and confidence in his promises and friendship, that she interfered but little in the administration, but left him to settle the estate in his own way; that the personal estate, although amply sufficient to pay all the debts of the deceased, was so administered by the said Alexander, that the records of the said administration showed an insufficiency for the payment of the debts, and that the said Alexander Wilson then procured a bill to be filed in the Court of Chancery for the sale of the said real estate by one of the creditors, and as your complainants were then minors, and mere children, their

interests were neglected and sacrificed, and a decree obtained, and a sale of the said farm made under the same, and the said Alexander Wilson became the purchaser thereof at and for the sum of $1,600, which sum, your complainants are informed and believe, was not one-fourth of the value of said farm; that the said Alexander Wilson, with a view to prevent competition in the bidding at the sale of the said farm, falsely and fraudulently represented to the creditors and others that he was buying the said farm for the benefit of the said widow and children of his deceased brother, whose sympathy for said family withheld them from bidding for the same; that although the proceeds of the personal estate accounted for by the said administrators was not above one-half of the same, it, with the net proceeds of the sale of the real estate, amounted to something over $3,100, and the whole amount of debts proved against the estate were about $3,900, and yet the creditors of said estate were paid some at fifty cents in the dollar, and some at thirty-three and a third cents in the dollar; and so your complainants allege and charge that the said administrators fraudulently concealed and retained for their own benefit the funds of the personal estate aforesaid; and that the said Alexander Wilson procured the sale of the said real estate, and purchased the same for about one-fourth of its value, by fraudulent and false representations aforesaid; and that your complainants and also the creditors of the said deceased were defrauded by the means aforesaid. Your complainants therefore pray your honor to pass a decree in the premises, annulling and setting aside the decree and sale under which the said Alexander Wilson claims or pretends to claim the farm and premises hereinbefore mentioned, and that the said administrators, to wit, the said Alexander Wilson and Catharine Ann Wilson, may be compelled fully and faithfully to account for the whole of the personal estate of the said William H. Wilson, deceased, and that subpœnas be issued, &c.

The defendant, Alexander Wilson, demurred to this bill, assigning as reasons therefor: 1st. That the bill did not

state a case entitling the complainants to the relief prayed for. 2nd. That the bill contained two distinct matters, thereby embarrassing his defence, and putting him to un- necessary trouble, delay and expense. 3rd. "That the complainants have united in their bill two entirely distinct and separate matters, having no proper and necessary con- nection; the one, wherein he is, with the said Catharine A. Wilson, called upon to settle their administration ac- counts, which were in the Orphans' Court of Cecil county; and the other a cause of action or demand, wherein this demurrant is sued for certain transactions respecting real estate, wherein the said Catharine A. Wilson is not alleged to have had any connection or concern with him, and which have no relation to said administration; that by such plead- ing of incongruous and unconnected matters, he will be seriously embarrassed in his defence, and will be subjected to the jurisdiction of this honorable tribunal, which is dis- tant from his place of residence, whereas, respecting said land, this defendant can only be sued in the Circuit Court for Cecil county. Wherefore this demurrant says the said bill is multifarious, and as such he demurs to it. Where- fore," &c.

The Court below (KREBS, J.,) passed an order overruling this demurrer, and from that order the present appeal is taken.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Alexander Evans* and *Levin Gale,* for the appellant, argued:

I. That the bill is too vague and indefinite to entitle the complainants to relief; that it is a bill, in the nature of a bill of review, to reverse and annul the decree in the cause in the Court of Chancery, and is entirely insufficient as a bill of such a character, inasmuch as it does not name the parties to the said cause, nor so describe the cause that the same may be ascertained or identified, and is not filed in the

same Court where said cause originated, and does not state whether said cause is still pending, or has been finally decided. *Randall vs. Howard,* 2 *Black,* 585. *Story's Eq. Pl.,* secs. 403, 426, 428. In no sense can the Circuit Court of Baltimore county be considered the equal or superior of the Court of Chancery, so as to review its action, unless it be given by the Constitution of 1851, Art. 4, sec. 23, or by the Acts of 1853, ch. 123, and 1854, ch. 183.

II. That the bill is multifarious. *White vs. White,* 5 *Gill,* 359. *Davoue vs. Fanning,* 4 *Johns. Ch. Rep.,* 199. *Griffin vs. Merrill,* 10 *Md. Rep.,* 365. *Ward vs. Duke Northumberland,* 2 *Anst.,* 468. *Story's Eq. Pl.,* sec. 279.

III. That no proper case of jurisdiction is shewn against the defendant, Alexander Wilson.

*William B. Bond* and *E. G. Kilbourn,* for the appellees, argued :

1st. That the bill is multifarious, uniting two distinct matters having no necessary connection with each other, and embarrassing him in his defence; and

2nd. That the Circuit Court for Baltimore city, have no jurisdiction of the case, inasmuch as the residence of the appellant is in Cecil county.

1st. Of the objection of multifariousness. On a question of this kind, every case must depend in a great degree, upon the particular facts and circumstances of that case, for no definite and reliable rule on the subject exists. Whilst on the one hand, Courts of Equity will not and ought not to suffer a confused and indiscriminate mingling of facts and allegations in no material way connected, making it difficult and embarrassing to a defendant to ascertain what he is called on to answer; on the other hand, they will not compel a complainant to bring a multiplicity of suits, thereby increasing his costs and expenses, when full justice can be attained by one proceeding. *Adams on Equity,* 309 and 310, 60 *Law Lib. Story's Eq. Pl.,* secs. 530, 539. *Dunn vs. Cooper,* 3 *Md. Ch. Dec.,* 48.

In this case the defendants are called upon as administrators of William H. Wilson, to account in reference to the personal estate, and the allegation is, that by means of fraudulent concealment of the personal estate by them, Alexander Wilson was enabled (on a showing of a deficiency of that estate to pay the debts) to obtain a sale of the real estate, and so to perpetrate the fraud charged on him in the purchase of it. Here is not only a proper but necessary connection of the two acts of fraud. In fact, the single question presented in this case is, that a fraud has been perpetrated by the defendants, and especially by Alexander Wilson, to possess himself of the property of his brother's children. The means are two-fold, but the end is single. It was impossible to state the means by which the fraud charged was accomplished, without referring to the settlement of the personal estate, because the creditors, in whose name the bill was filed, could not have procured a decree, except upon the allegations and shewing of deficiency of personal assets. It was a necessary part of the machinery by which the fraud was to be wrought out; and to charge the bill in this case with multifariousness, would simply be to assert that I have committed two acts of fraud to attain my purpose, but you shall not allege but one, for the demurrer admits the facts set forth in the bill to be true. But it will be said that the prayer of the bill is for two distinct matters of relief: 1st, to account; and 2nd, to set aside the decree and sale of the real estate. Now these two matters of relief prayed for, like the allegations in the bill, are necessarily connected one with the other, and dependant one upon the other; but it is asked, how can these allegations and these prayers embarrass the defendant in his answer? How does it put him to unreasonable and unnecessary expense to procure a copy of the bill and answer it? if convenience be the rule as mentioned in the cases. The convenience of the complainant as well as of the defendant must be consulted, and with what degree of convenience could the complainants have stated their case,

their whole case, without the allegation of fraud in the settlement of the personal estate. In this case the language of the Court in the case of *Mewshaw vs. Mewshaw*, may be appropriately quoted: "Though parties in certain cases have a right to resort to a demurrer, this mode of defence is viewed with suspicion and disfavor, as indicative of an unwillingness fairly to meet the plaintiff's case." *Mewshaw vs. Mewshaw*, 2 *Md. Ch. Dec.*, 14.

But if the bill did contain distinct matters, yet if they relate to the same subject, it would not be held to be multifarious. *Doub vs. Barnes*, 1 *Md. Ch. Dec.*, 127. *Dunn vs. Cooper*, 3 *Md. Ch. Dec.*, 46. The leading case in Maryland, on the subject of multifariousness, is that of *White vs. White*, 5 *Gill*, 359, but it is utterly unlike the case before the Court in all its phases. It was a bill asking for an account and settlement of three or four partnerships of two different businesses, to wit: merchandizing and distilling, and running through a period of thirty years, during which time several new partnerships were formed, some of the parties having no interest whatever in the concerns they were asked to account for; and finally, making Henry White a party, who never was a partner at all. It was followed by the case of *Griffin & Lee vs. Merrill*, 10 *Md. Rep.*, 364, which was almost an exact counterpart of *White vs. White*. In both these cases, the bills were held to be multifarious, and properly so. But the case before the Court bears no analogy to either of those cases, either in fact or in principle.

2nd. On the question of jurisdiction. The defendant's objection on this ground, depends altogether upon the decision of multifariousness. If the complainants have united distinct and separate matters in the bill in no way connected with each other; if they ought to have sued Catharine Wilson and Alexander Wilson separately; then, (the argument is,) that in regard to this demurrer, the Circuit Court of Baltimore city has no jurisdiction over him, a resident of Cecil county. Catherine Wilson is a necessary party—she is a co-admin-

istrator, and was a party to the fraudulent and false inventory returned to the Orphans' Court: and thus aided in the perpetuation of the wrong done to these complainants, whether with full knowledge on her part we care not to enquire. She was a necessary party to this proceeding, and residing in the city of Baltimore, the provisions of the constitutional provision apply, and the suit may be instituted in the jurisdiction where either of the defendants reside. Const. of Md., Art. 4, sec. 27.

Bowie, C. J., delivered the opinion of this Court:

This appeal is taken from an order of the Circuit Court of Baltimore city, sitting in equity, overruling the demurrer of the appellant to the bill of the appellees, for multifariousness. The bill prays that the administrators, Catharine and Alexander Wilson, may be compelled to account for the whole personal estate of their intestate; for a decree annulling and setting aside the decree and sale under which Alexander Wilson claims the lands of the deceased intestate; and that subpœnas may issue to the Sheriff of Baltimore city for the said Catharine Ann, and to the Sheriff of Cecil for the said Alexander, and for general relief.

To this bill the appellant demurred for multifariousness, in that the complainants have united in the same bill two entirely distinct and separate matters; the one, wherein he is, with the said Catharine A. Wilson, called upon to settle their administration accounts, which were in the Orphans' Court of Cecil county, and the other, wherein the demurrant is sued for certain transactions respecting real estate, with which the said Catharine is not alleged to have any connection.

The learned judge who decided this case below, after referring to several authorities, showing the vagueness and uncertainty of the rules defining multifariousness in equity, and the difficulty of applying them, reaches the conclusion: "That there cannot be a doubt that if a party thinks proper to combine separate and distinct transactions and matters,

22      v.23.

all designed to carry out a scheme of fraud, that he can be called to answer to them all in one bill, however complicated they may be." And adds: "But the complainants not only call upon these defendants to answer in regard to the alleged fraudulent administration of this personal estate," &c., "with a view to establish the fact as a link in the chain of circumstances constituting the fraud charged in the bill, but they so call upon them with a view to relief," &c. "I can see no reason why they should not have this relief in this cause, if they are entitled to it," &c. Meaning an account as to the personal estate.

The first branch of the proposition is correct, but the authorities do not sustain the decision of the learned judge, in our opinion, in its practical application to relief as to several matters of distinct natures. The rule and its reason is concisely and clearly stated in *Maddocks' Chancery Practice*, thus: "If a bill be brought concerning things of *distinct natures* against several persons, or against *one*, it is demurrable; but not if *combination* is charged, unless it is denied by the answer, but no more than combination should be answered, or the answer would overrule the demurrer. If joint and separate demands be comprehended in one bill, it is demurrable; for, if the Court were to allow a plaintiff to demand by one bill several matters of different natures against several defendants, it would tend to load each defendant with an unnecessary burthen of costs, by swelling the pleadings with the state of the several claims of the other defendants, with which he has no connection. Those cases, where unconnected parties have joined in a suit, are where there has been one common interest among them all, centering in the point in issue in the cause." 2 *Mad. Ch. Pr.*, 294.

It will be perceived, upon analysing the rule, that things of *distinct natures* cannot be introduced into a bill against two or more persons, *unless combination is charged.* And then, if the combination is denied by the answer, the bill is demurrable.

The bill before us is drawn with a double aspect. It sedulously charges the appellant with studied duplicity and fraud, from the time of obtaining part in the administration of his brother's personal estate, to the consummation of his design, in becoming the purchaser of the real estate, at a very reduced price; in all which, there is no intimation of the complicity of Catharine A. Wilson; on the contrary the inference is, that her confidence was misplaced and abused by him.

It is alleged, that soon after the death of William H. Wilson, the appellant, "pretending great friendship and interest for his deceased brother's widow and infant children, procured the consent of the said widow that letters of administration on the personal estate of the said deceased should be issued to him, the said Alexander, and the said widow jointly, alleging he would transact all the business and administer the said estate in the best manner possible for the interest of the widow and children, without giving her any trouble, and so inspired the said widow with trust and confidence in his promises and friendship, that she interfered but little in the administration, but left him to manage and settle the estate in his own way."

Here is a complete exculpation of the widow, instead of a charge of combination. All the subsequent allegations, to the completion of the fraud charged, are personal and exclusively applied to the appellant. But, as if by way of abundant caution, or apprehension that enough had not been charged, the bill concludes: "And so your complainants allege and charge that the said administrators fraudulently concealed and retained for their own benefit the funds of the personal estate aforesaid," and prays that the said administrators, to wit, the said Alexander Wilson and Catharine Wilson may be compelled fully and faithfully to account for the whole of the personal estate of the said William H. Wilson, deceased, &c., after having previously prayed specific relief against the said Alexander, touching the real estate. It is hence apparent two distinct objects of

distinct natures against several persons, in different char-
acters and joint and separate demands, are embraced in the
same bill.   If the complainants had confined themselves to
the allegations respecting the personal estate, which were
peculiar to the appellant, and auxiliary to the consumma-
tion of the fraud charged on him, in the purchase of the
real estate, the charges would have been all tending to one
end, and though involving various matters, would not have
been, in the legal sense, multifarious.   These charges would
have been mere links in the chain of circumstances, to be
proved as *indicia* of fraud in the main transaction,—the sale
and purchase of the real estate.   They are made not merely
as auxiliary to the relief prayed against Alexander, but
constitute a substantive ground of relief against him and
another, and thus subject the defendants to unnecessary
burthens.

In *Darone vs. Farming*, 4 *Johns. Ch. Rep.*, 199, Chan-
cellor Kent held, that a demurrer will lie for such multi-
fariousness of matter as requires totally distinct examina-
tions and accounts, so that a demand as legatee against the
defendant as executor, could not be blended in the same
bill with a demand of the complainant in his private char-
acter against the defendant in his private character.   Our
own decisions, in 5 *Gill*, 359, and 10 *Md. Rep.*, 365, are to
the same effect.   For these reasons we think there was er-
ror in the order of the Court below in overruling the de-
murrer, and the same must be reversed.   In conformity
with the precedents in *White, et al., vs. White*, 5 *Gill*, 359,
and *Griffin & Lee, vs. Merrill*, 10 *Md. Rep.*, 373, the bill
must be dismissed, without prejudice and without costs.

*Reversed and bill dismissed.*