MARTHA E. WHITAKER, Individually and as Execu-
trix of the Last Will and Testament of Carrie
C. Updegraff, Deceased, et al.

*vs.*

JOSEPH COUDON, Individually and as Sole Surviv-
ing Executor-Trustee of the Estate and Last
Will and Testament of George P. Whitaker,
Deceased, et al.

*Pleading in equity: multifariousness.    Laches.*

The question of multifariousness must be determined from
the facts of each case, and in such determination the court has
a certain sound discretion.                          p. 243

When a bill is bad for multifariousness, it is so because of a
misjoinder of parties, complainants or defendants, or a misjoin-
der of distinct and separate matters of equitable cognizance
between the same parties of so dissimlar a character as to ren-
der it unfit that they should be litigated in the same suit.
                                                     p. 243

Conscience, good faith and reasonable diligence are always
required in order to justify the interposition of a court of equity.
                                                     p. 244

Where the allegations of the bill disclose that the complainant
was guilty of laches, and the delay (over 20 years) in assert-
ing her rights is not explained, the bill should be dismissed,
if it is objected to on that ground.                 p. 244

*Decided February 15th, 1917.*

Appeal from the Circuit Court for Cecil County.    In
Equity.    (Constable, C. J., and Hopper and Adkins,
JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Burke, Patti-
son, Urner and Stockbridge, JJ.

*John S. Strahorn* and *H. A. Brann, Jr.,* for the appellants.

*Thomas H. Robinson,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Circuit Court for Cecil County, sustaining the demurrer to the appellant's bill.

The bill is a very long one and contains much argumentive matter. The facts alleged in it are substantially as follows:

In 1878 George P. Whitaker of Cecil County, Maryland, formed a corporation under the laws of this State, known as the George P. Whitaker Company. Its capital stock consisted of 520 shares, of the par value of $500 per share, all of which was taken by him, but of it, he sold one share to each of seven persons, among whom were Joseph E. Whitaker, Nelson E. Whitaker and Joseph Coudon, who subsequently became executors of his last will and testament.

To the corporation so formed he conveyed certain lands owned by him individually, located in Cecil and Baltimore Counties and in the State of Delaware, the value of which, as stated in the bill, was two hundred and sixty thousand dollars.

George P. Whitaker had previously, in the year 1875, formed the Whitaker Iron Company, incorporated under the laws of West Virginia. It was capitalized at $500,000 consisting of 5,000 shares, at the par value of $100 per share, but only $125,000 of its stock were issued.

Of the 1250 shares issued, 250 shares were disposed of by him to each of his children, Nelson, Edmund, Cecil and Caroline, and the remaining 250 shares he held for his two grandchildren, George P. Whitaker, Jr., and Carrie Coudon Whitaker (later Updegraff), minor heirs of his deceased son Henry C. Whitaker, until they should come of age.

Thereafter George P. Whitaker, Jr., sold his entire stock— 125 shares—to persons not named in the proceedings; and George P. Whitaker, Sr., became the purchaser of one-half of

Edmunds stock therein, being one-tenth of its entire stock, and also the purchaser of the stock of Carrie Whitaker, amounting also to one-tenth of the entire stock of the company. As a result of these purchases, George P. Whitaker, Sr., became the owner in his own right of one-fifth of the stock of the company.

George P. Whitaker died on September 30th, 1890, and by his last will and testament admitted to probate in the Orphans' Court of Cecil County, January 5th, 1891, he, after making provision for his widow, directed that all the rest, residue and remainder of his estate and property should be divided into five equal parts or shares, and that one of such parts or shares be distributed to each of his three children, Caroline Naudine, Nelson E. Whitaker and Edmund S. Whitaker; one part or share to Carrie Whitaker and George P. Whitaker, Jr., daughter and son of Henry C. Whitaker a deceased son of the testator; and one part or share to Nelson Price Whitaker, son of Cecil Whitaker, another of his deceased sons.

By his said will George P. Whitaker named as his executors, Joseph R. Whitaker, Nelson E. Whitaker and Joseph Coudon, who thereafter qualified and entered upon the discharge of the duties of their office, but Joseph R. Whitaker resigned his trust sometime prior to October, 1891.

In 1909, Nelson E. Whitaker died testate in West Virginia, and letters testamentary on his estate were granted to Sarah F. Whitaker, Albert C. Whitaker and Alexander Glass, in that state, but no letters have been granted them or to any one else on his estate in Maryland.

Joseph Coudon is still alive and is the sole surviving executor of George P. Whitaker.

The personal estate of George P. Whitaker at the time of his death consisted principally of the 513 shares of stock in the George P. Whitaker Company, assessed at $500 per share or $256,500, and the 250 shares in the Whitaker Iron Company assessed at $100 per share, or $25,000, and the ad-

vancements to his beneficiaries, which he directed should be charged against them which amounted to $340,729.73.

So far as the record discloses he died seized and possessed of no real estate, unless as claimed by the plaintiffs he was at such time the owner of the lands held by the George P. Whitaker Company.

The contention of the plaintiff is made upon the allegation that the seven shares disposed of by George P. Whitaker were only nominally held by those to whom they were assigned, including Nelson E. Whitaker and Joseph Coudon, "who paid nothing therefor and immediately assigned said stock back to the company as collateral security for the payment of the par value thereof" and was thereafter so held by the company.

On the 14th day of October, 1891, the Orphans' Court of Cecil County upon the petition of the executors of George P. Whitaker, deceased, passed the following order:

> "Ordered that Joseph Whitaker, Nelson E. Whitaker and Joseph Coudon, executors of George P. Whitaker, deceased, be and they are hereby authorized and directed to exchange the whole amount of the capital stock of the George P. Whitaker Company held by said executors for a first mortgage for one hundred and fifty thousand dollars * * * upon all the real estate now owned by the George P. Whitaker Company, and which said company has agreed to sell to the Principio Furnace and Rolling Mill Company, a corporation organized under the laws of West Virginia; and such an amount of the capital stock of the Principio Furnace and Rolling Mill Company as may be agreed upon, provided that said amount of such stock at the par value thereof be not less than one hundred and fifty thousand dollars * * * and it is further ordered and directed by the court that said mortgage and stock so delivered, and the net proceeds thereof after payment of the debts of the said George P. Whitaker Company, be held by said executors subject to the same trust and liabilities as the stock of the George P.

Whitaker Company now held by said executors is charged by the will of the said George P. Whitaker, deceased."

On the 31st day of December following, the George P. Whitaker Company conveyed all the lands of the George P. Whitaker Company, both in Maryland and in Delaware, to John S. Wirt, in trust, to convey the same to the said Principio Furnace and Rolling Mill Company. It seems however, nothing more was done in relation to this matter, as the lands were never conveyed to the Principio Furnace and Rolling Mill Company, nor was the deed to Wirt ever cancelled.

On March 1st, 1892, after Joseph R. Whitaker had resigned as one of the executors of George P. Whitaker, a bill was filed by the George P. Whitaker Company, in the Circuit Court for Cecil County, asking for its dissolution. This was pursuant to a resolution of the stockholders of the company passed by a unanimous vote at a stockholders' meeting held on the 28th day of January, 1892, at which all of the stockholders were said to have been present and to have voted.

It was alleged in the bill as a reason for the dissolution of the company:

"That while said company is solvent, it has not sufficient capital to work and develop its property to advantage so as to earn dividends for its stockholders and to meet its outstanding indebtedness when and as the same matures; although the value of its property, real and personal, is in excess of its debts; that there is no prospect of securing additional capital for the necessary uses of said company, nor is there the ability on the part of the holders to dispose of the property at private sale owing to the objections that have been made and are now urged to said sale by the *cestui que trusts* under said will of George P. Whitaker, deceased, who will not consent to the surrender of the stock of the George P. Whitaker Company, in which said *cestui que trusts* have an interest."

On April 6th, 1892, by a decree of the Circuit Court for Cecil County, passed on that day, the company was dissolved and John S. Wirt was appointed receiver. He thereafter duly qualified as such and sold the company's real estate to the Whitaker Iron Company, as the bill alleges, for $70,000, although by the deeds therefor given to the purchasers thereof it is shown that the aggregate amount of sales for all of said lands exceeded one hundred thousand dollars.

The sales so made by the receiver were reported to and finally ratified by the Court in due course, without any objection made thereto, at the time, so far as the record discloses.

The deed of the receiver conveying to the purchasers the Baltimore and Cecil County lands, a copy thereof being filed with the bill as an exhibit, was executed on the 2nd day of October, 1892. In it it is stated that the sale at such time had been ratified by the Circuit Court and the purchase money fully paid to the receiver. The bill however alleges that the purchase money was not paid before the property was conveyed, but a credit therefor was afterwards given.

On March 30th, 1892, pending the dissolution proceedings, the George P. Whitaker Company, by its president, Joseph Coudon, pursuant to a resolution passed by the directors of the company, executed a deed to John S. Wirt, conveying to him the Delaware lands to be by him sold at the same time and upon the same terms that the lands of the company in Maryland should be sold under a decree to be passed by the Circuit Court for Cecil County, and to apply the proceeds of such sale in the same manner as the proceeds of the Maryland property were by said decree to be applied.

The plaintiffs allege that the dissolution of the company and the sale of its property by the receiver was the result of deceit, fraud and concealment practiced on the Circuit Court by Nelson E. Whitaker and Joseph Coudon, who conspired and acted collusively to defraud Carrie C. Updegraff and George P. Whitaker, Jr. The deceit, fraud and concealment that is said to have been practiced upon the Court was the

railure of Whitaker and Coudon to disclose to it, in the proceedings for dissolution their connection with the Whitaker Iron Company and the Principio Furnace and Rolling Mill Company, and the fact that they had obtained the order of the Orphans' Court hereinbefore mentioned, authorizing and directing the exchange of the company's stock with the Principio Furnace and Rolling Mill Company for the aforesaid mortgage and stock of the latter company and their failure to disclose in such proceedings the further fact that pursuant thereto the property of the George P. Whitaker Company had been conveyed to John S. Wirt, in trust, to be by him conveyed to the Principio Company; though such conveyance to the latter company had never been made, notwithstanding the allegation made in the bill for dissolution that the stockholders were unable "to dispose of the property at private sale owing to the objections that had been made and are now urged to such sale by the *cestui que trust,* under said will of George P. Whitaker, deceased, who will not consent to the surrender of the stock of the George P. Whitaker Company in which said *cestui que trust* have an interest." The concealment of these facts, the bill alleges, was to hide the value of the real estate and fraudulently promote the interest of the executors to the injury and loss of the plaintiffs.

The plaintiffs also allege that the dissolution of the George P. Whitaker Company and the sale of its land as above mentioned, resulted in the wrongful reduction of their one-fifth interest in the George P. Whitaker Company to a one-twenty-fifth interest therein, and that this was the result of the fraudulent acts and conduct of Nelson E. Whitaker and Joseph Coudon, who, as the bill alleges, were large stockholders, officers and directors in the purchasing company; officers and directors in the selling company and executors of George P. Whitaker at the time of the sale of the property.

The bill also alleges in substance that the plaintiffs, Carrie C. Updegraff and George P. Whitaker, Jr., as legatees of George P. Whitaker, became entitled to one-fifth of his stock in the George P. Whitaker Company, which was practically

one-fifth of the entire stock of that company, and to only one-fifth of his one-fifth of the stock in the Whitaker Iron Company; while Whitaker and Coudon each, not only became entitled as legatees of George P. Whitaker to one-fifth of his stock in each of the two companies, but in addition thereto, each of them held one-fifth of the stock of the Whitaker Iron Company.

The bill then alleges that Whitaker and Coudon as such stockholders in said companies, and while acting as executors of George P. Whitaker, and directors in both the George P. Whitaker Company and the Whitaker Iron Company, being moved by their hostility to Carrie C. Updegraff and George P. Whitaker, Jr., conspired to injure and defraud them by decreasing the extent and value of their legacy; and to effect such purpose, instituted the aforesaid proceedings to dissolve the George P. Whitaker Company, resulting in its dissolution, and the appointment of a receiver and the sale of its lands to the Whitaker Iron Company, and the practical absorption of the George P. Whitaker Co. by the Whitaker Iron Company, whereby the interest and profits of Whitaker and Coudon in the last named company were greatly enlarged, while the interests of the plaintiffs, Carrie C. Updegraff and George P. Whitaker, Jr., in the George P. Whitaker Company, in which they were the most interested, were largely diminished, causing great pecuniary loss and injury to them.

The bill further alleges that after several attempted mergers the Whitaker Iron Company has been absorbed by the Whitaker-Glessner Company, a corporation formed by Nelson E. Whitaker and others, which has taken over all its West Virginia property; that George P. Whitaker estate by virtue of holding one-fifth of the stock of the absorbed company, is entitled to one-fifth of the Whitaker-Glessner Company, but it has not received it, "Nelson E. Whitaker and others having unlawfully and fraudulently seized the same to the loss of the trust estate."

The prayer of the bill asked:

"First—That the alleged dissolution of the George P. Whittaker Company, and the decree therefor and the alleged sales thereafter made to the Whitaker Iron Company be reopened, cancelled, annulled, set aside, ignored or so modified as to restore these plaintiffs to the lawful one-fifth right and interest therein to which they are entitled under the will of George P. Whitaker, deceased.

"Second—That a decree be passed annulling and setting aside as fraudulent and void all the aforesaid transfers or deeds from George P. Whitaker Company to John S. Wirt, as receiver or trustee, and all the aforesaid deeds made and executed by him as trustee to the George P. Whitaker Iron Company, including the deed from him to said company for the Delaware lands, or that all of the lands in said deeds conveyed to the said Whitaker Iron Company be declared to be held by said Whitaker Iron Company in trust, and impressed with a trust for the benefit of the estate of George P. Whitaker, deceased.

"Third—That the said Whitaker Iron Company, and the said Joseph Coudon, sole surviving executor-trustee of said estate of George P. Whitaker, deceased, and all other parties hereto, and all others, having, claiming or possessing any right, title or interest in and to the lands affected by these proceedings or any thereof, be restrained and enjoined from any and all interference thereof and encumbrance thereof, by way of mortgage lien, or otherwise, and from all conveyances, transfers or otherwise disposing of any kind thereof, or any thereof, until the further order and direction of this Honorable Court in the premises.

"Fourth—That all the books and papers of and concerning the George P. Whitaker Company, dissolved, may be produced by Joseph Coudon, surviving executor-trustee and alleged officer of such corporation; that discovery may be had by said Joseph Coudon, and all others necessary who are parties hereto, of all the proceedings, books, papers, etc., touching or concerning said dissolved corporation, as well as all

deeds and papers referred to in this bill of complaint which are not of record, and pertinent to this issue, before the court in this proceeding.

"Fifth—Prayer for general relief."

All of the defendants consisting of Joseph Coudon, individually and as sole surviving executor-trustee of the estate and last will of George P. Whitaker, deceased, and Mary L. Whitaker, widow of said deceased; Sarah F. Whitaker, Albert C. Whitaker and Alexander Glass, executors of the estate and last will of Nelson E. Whitaker, deceased; Sarah Glass, Albert C. Whitaker, Henry C. Whitaker, Eliza Wagner, Nelson Price Whitaker and the Whitaker Iron Company, Incorporated, jointly and severally demurred to the bill, one of the grounds of the demurrer being that the bill is multifarious. It was upon that ground that the Court below sustained the demurrer, but in its order sustaining it, leave was granted to the plaintiffs to amend their bill within the time therein named.

There is no inflexible rule by which to determine whether or not a bill is multifarious. To say what constitutes multifariousness as an abstract proposition, is, upon the authorities, uttterly impossible. *Miller's Equity Procedure,* sec. 105. As this Court said in *Chew* v. *Glenn,* 82 Md. 375: "Each case must be governed by its own circumstances, and as they are very diversified, the Court must exercise a sound discretion on the subject. *Gains* v. *Chew,* 2 How. (U. S.) 619. The Court in *Wales* v. *Newbold,* 9 Mich. 45, very pertinently said: "When a bill is multifarious, it is so, for the reasons, either because of a misjoinder of parties, complainants or defendants, or a misjoinder of distinct and separate matters of equitable cognizance between the same parties of so dissimilar a character as to render it unfit that they should be litigated in the same suit.' "

Applying these principles to the case at bar, the action of the Court in holding the bill multifarious should be affirmed.

We think, however, it well to say that by the allegations of the bill it is shown that the plaintiffs are guilty of laches, and if their delay in asserting their rights is not explained in the amended bill, if one be filed, it should be dismissed, if such objection is made to it.

The bill discloses that the acts of the defendants complained of, upon which the plaintiffs seek relief, occurred many years prior to the filing of this bill.

The dissolution of the George P. Whitaker Company; the appointment of a receiver therefor; the sale of its lands for the alleged inadequate price; the conveyance of said lands to the Whitaker Iron Company; the alleged absorption of the George P. Whitaker Company by the Whitaker Iron Company, and the alleged wrongful conversion of their one-fifth interest in the George P. Whitaker Company to a one-twenty-fifth interest in the Whitaker Iron Company, if converted at all, occurred more than twenty years prior to the filing of the bill in this case, and, so far as the bill discloses, before any action was taken by the plaintiffs to redress such alleged wrongs.

The bill discloses no circumstances satisfactorily excusing or explaining their delay in asserting their rights. "Conscience, good faith and reasonable diligence are always required in a Court of Equity to justify its interposition. Where these are wanting the Court is passive. Laches and neglect are always discountenanced." *Nable* v. *Turner,* 69 Md. 527; *Nelson* v. *Hagerstown Bank,* 27 Md. 51; *Hawkins* v. *Chapman et al.,* 36 Md. 83.

There are other allegations in the bill of a general and indefinite character charging the defendants with wrong doings that resulted, as it is alleged, in injury and loss to the plaintiffs, but these allegations, as stated, cannot properly form the basis for the relief here sought.

The order appealed from will be affirmed.

*Order affirmed, with costs to the appellees.*