OAKFORD REALTY COMPANY ᴇᴛ ᴀʟ. *v.* JOHN J. BOARMAN.

NATHANIEL SILBERSTEIN ᴇᴛ ᴀʟ. *v.* JOHN J. BOARMAN.

[Nos. 24, 25, October Term, 1928.]

66

*Decided November 21st, 1928.*

The causes were submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edwin H. Brownley, William Saxon,* and *Derlin McKindless,* for the appellants.

*Herbert L. Grymes,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, overruling the respective demurrers of the four appellants to the bill of complaint of the appellee.

The allegations of the bill are substantially as follows: The appellee, John J. Boarman, during the years 1926 and 1927,

was engaged in the coal business in Baltimore, trading as the Hudson Coal Company. During the month of September, 1926, he was approached by Eli Silberstein, one of the appellants, who stated that his brother, Nathaniel Silberstein, appellant, would be interested in the purchase of coal for an apartment house in Baltimore owned by the Oakford Realty Company, appellant, of which Nathaniel Silberstein was president. During the month of September Nathaniel Silberstein 'phoned to the appellee an order for five hundred tons of coal to be delivered during the fall and winter of 1926-1927, at the Oakford Apartments, and following receipt of the order the appellee wrote the Oakford Realty Company a letter confirming the order. During the fall and winter of 1926-1927 and down to May 24th, 1927, large quantities of coal were delivered to the Oakford Apartments on the responsibility of the Oakford Realty Company, which was represented by Eli Silberstein and Nathaniel Silberstein to be the owner of the Oakford Apartments.

On January 4th, 1927, the Oakford Realty Company, having failed to pay for the coal delivered up to that time, gave the appellee a note for $828. This note was renewed and curtailed from time to time and further deliveries of coal were made until the note and open account totaled $1,288.92, and no payment having been made thereon, suit was brought in the Court of Common Pleas of Baltimore City on April 4th, 1928, and judgment entered in favor of the appellee against the Oakford Realty Company for $1,346.92. After the entry of judgment an inspection of the land records, made with a view to issuing execution on the property of the Oakford Realty Company, disclosed the fact that the Oakford Realty Company, about three months before the first delivery of coal to the Oakford Apartments by the appellee, had conveyed the apartment house property to the Chatham-Parker Corporation, of which Eli Silberstein was and is the president, and to this day the title is in the name of the latter corporation. The petitioner further says that he believes the representations made by Eli Silberstein as to the ownership of the Oakford Apartments by the Oakford Realty Company

were wilful misrepresentations as to ownership, which were intended to and did mislead the appellee in extending credit to the Oakford Realty Company, and that because of the false and fraudulent representations so made he has been greatly damaged, and the appellee makes. the same charge against Nathaniel Silberstein. The appellee further says in his petition that the Oakford Realty Company has continued to act as the owner of the Oakford Apartments in spite of its conveyance to the other corporation; that the bills for rent are still being sent to the tenants in the name of the Oakford Realty Company, and receipts for rent paid are signed by the Oakford Realty Company, and checks received and cashed drawn to its order in payment of such rents. These are in effect all of the allegations of the bill. The appellee then prays for relief as follows:

"Wherefore your complainant prays that the aforesaid deed by the Oakford Realty Company to the Chatham-Parker Corporation may be declared fraudulent, void and of no effect, and set aside;

"That the said Nathaniel Silberstein, president of the Oakford Realty Company and Eli Silberstein, one of the incorporators of the Chatham-Parker Corporation, be required to show your Honor why they should not be held personally responsible in damages to your petitioner for the amount of the judgment secured against the Oakford Realty Company and now believed to be worthless because all of the property and assets of the Oakford Realty Company have now been conveyed to the Chatham-Parker Corporation;

"That a preliminary and permanent injunction be issued by this court against the Chatham-Parker Corporation, the Oakford Realty Company, Nathaniel Silberstein, and Eli Silberstein, enjoining them and each of them from transferring or assigning any property now owned by them in order to preserve such property for the payment of such judgment. or decree as this Honorable Court may be disposed to issue in the premises.

"And for such other and further relief as the complainant's case may require."

The court then passed an order on the defendants to show cause within ten days why the relief prayed should not be granted. To this bill each of the four defendants filed demurrers, asserting as grounds thereof:

"1st. That the plaintiff has not stated such a case as entitles him to relief in equity. 2nd. That upon the statement of facts mentioned in the bill of complaint the court is without jurisdiction to hear and determine said cause of complaint. 3rd. That the statements of fact mentioned in the bill of complaint are vague, uncertain and indefinite. 4th. That the complainant has a full, complete and adequate remedy at law. 5th. That the plaintiff is without equity. 6th. That the complainant's bill of complaint is bad in substance, defective in law, insufficient in allegation of fact and defective in equity to constitute a valid cause of action in equity, and for other reasons to be shown at the hearing of this demurrer."

After hearing the demurrers the same were overruled, with leave to the respondents to answer within ten days; and from this order an appeal was taken.

In its brief and in the argument the appellants contended that the chancellor erred in overruling the demurrers of the appellants for the following reasons:

1. Because the bill of complaint is multifarious; 2. Because the allegations of the bill do not state any cause which would entitle the complainant to any relief in a court of equity against any of the respective defendants therein; and 3. Because the complainant has a clear, adequate and complete remedy at law.

1. *Miller's Equity Procedure,* 133, defines multifariousness "as the compounding of distinct matters in one bill; the blending of distinct demands; the improperly joining in one bill of independent matters." *Story Eq. Pl* (10th Ed.), sec. 271; *Thomas v. Mason,* 8 Gill, 1, 7. "To say what constitutes multifariousness as an abstract proposition is, upon the authorities, utterly impossible" (*Miller's Equity Proc.* 134), the question resting under the circumstances of each partic-

ular case, in which the court must exercise a sound discretion. *Chew v. Glenn,* 82 Md. 370, 375; *Whitaker v. Coudon,* 130 Md. 234, 243; *Roth v. Stuerken,* 124 Md. 404, 408; *Whitman v. United Surety Co.,* 110 Md. 421, 428; *Story Eq. Pl.* (10th Ed.), secs. 284, 530 et seq. There is so much confusion amongst the authorities on multifariousness and misjoinder of both parties and subject matter that it is difficult to distinguish them. *Story Eq.* (10th Ed.), sec. 530; *Daniel's Chancery Pl. & Pr.* 335. In the instant case there seems to be a misjoinder of parties and subject matter. We have here a bill to set aside a conveyance from one corporation to another and in the same bill charges against the respective presidents of the corporation, with a prayer that the plaintiff be granted a decree for damages against them to the extent of the plaintiff's claim against the Oakford Realty Company. These allegations against the individual appellants sound more like a declaration at law than like a bill in equity.

The interests or demands must center in the point at issue in the cause. *Wilson v. Wilson,* 23 Md. 162, 170; 21 *C. J.* 423. In this case the point at issue is whether the property mentioned in the bill was conveyed by one corporate appellant to the other corporate appellant in fraud of the former's creditors, and if so to subject it to the judgment of the appellee.

Bringing in the Silbersteins as defendants cannot help the situation. That is not necessary to accomplish the appellee's purpose to set aside the conveyance complained of. They may have conspired to defraud the appellee. If they did he has his remedy against them by an action of deceit, which is so dissimilar to the general purpose of the bill as to render it unfit that the claims should be litigated in the same suit. *Whitaker v. Coudon, supra; Beechey v. Heiple,* 130 Md. 683, 691; *Ruhe v. Ruhe,* 112 Md. 595, 599; *Belt v. Bowie,* 65 Md. 350, 354; *Becker v. Lipps,* 131 Md. 301; *Abramson v. Horner,* 115 Md. 232. The demurrers of Eli Silberstein and Nathaniel Silberstein should have been sustained and the bill dismissed as to them. *Story Eq. Pl.,* sec. 544.

2. It is provided by section 6 of the Fraudulent Conveyance Act (article 39-B of the Code, Acts of 1920, ch. 395) that: "Every conveyance made and every obligation incurred without fair consideration, when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors"; and by section 7: "Every conveyance made and every obligation incurred with actual intent, as distinguished from an intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." Under these sections of the Code, and in accordance with the decisions of this court, it is necessary for subsequent creditors to allege as a fact that the conveyance of which they complain was made with the intention and design to defraud such creditors, and this fraudulent purpose will not be presumed, but must be proved, with the burden resting upon the one who charges the fraud. *Turner v. Hudson Cement & Supply Co.*, 133 Md. 145; *Matthai, Ingram & Co. v. Heather*, 57 Md. 483; *Kane v. Roberts*, 40 Md. 593, 594.

On the facts stated in the bill the appellee should have no difficulty in directly charging that he extended credit to the Oakford Realty Company upon the false and fraudulent representations of Eli Silberstein, president of the Chatham-Parker Corporation, and of Nathaniel Silberstein, president of the Oakford Realty Company, that the latter company at that time owned the apartment house, though they then knew that three months earlier the conveyance of the same had been made to the Chatham-Parker Corporation, and that it was made for the purpose of defrauding the creditors, present and future, of the former. Instead of saying that he now believes his judgment to be worthless because all of the property and assets of the Oakford Realty Company have been conveyed to the Chatham-Parker Corporation, the appellee might have said it was worthless because of the fraudulent conveyance so made. The last allegation appears in the prayer for relief but not in the body of the bill. The appellee

has attempted to state some of his facts in the bill and others in the prayer for relief. "If the facts stated in the bill are not sufficient he cannot resort to any matters outside of the bill to supply the deficiency." * * * "So, also, if a fact necessary to relief is omitted in the bill but supplied by the proof the court cannot grant relief until the bill is amended." *Miller's Equity Proc.*, 191. "After the plaintiff has set forth the facts of his case he should proceed to specify and ask for that kind of relief to which he thinks himself entitled." *Miller's Equity Proc.*, 128. The appellee, on the facts in his possession and within his knowledge, can directly charge that the account against the Oakford Realty Company was fraudulently contracted, and that the conveyance to the Chatham-Parker Corporation was made with the intent to defraud him and other present and subsequent creditors of the former corporation, but whether he proves his allegations is a matter for further determination by the court.

The mere allegation of fraud is, of course, not sufficient. The essential facts upon which the charge of fraud is based must be averred and not based merely on belief or suspicion; as will appear from the very recent case of *Homer v. Crown Cork and Seal Co.*, 155 Md. 66; *Miller's Equity Proc.*, 118.

Assuming that the allegations of the bill are sufficient and the facts subsequently proved, "A court of equity has undoubted jurisdiction to vacate a deed for fraud, and when a bill is filed for that purpose the court will, if it is vacated, proceed to do full and complete justice to all parties interested in the property. It will sell the property, if necessary, and distribute the proceeds, and will always see that it goes to the parties entitled to it." *Canton v. McGraw*, 67 Md. 583, 591; *Brian v. Thomas*, 63 Md. 476, 480; *Trego v. Skinner*, 42 Md. 426.

3. The third contention of the appellants is that the complainant has a clear, adequate and complete remedy at law. This contention, of course, is based on the allegations of the bill. The bill itself fails to disclose the fact that the Oakford Realty Company has no property other than the

apartment house out of which the plaintiff's judgment might be made. It does say in one of the prayers for relief that it has no other property, but this is not an allegation of the bill. Since the passage of the Act of 1898, ch. 254 (article 16, section 48, of the Code), it is not necessary for creditors to have obtained judgment on their demands before relief is sought against a conveyance fraudulent as to creditors.

The real reasons for a creditor to assert in a bill against the debtor and his assigns or grantees that he has no adequate remedy at law whereby he can collect a debt are that the debtor has no property remaining out of which his demand or claim may be recovered at law, and that a fraud has been perpetrated in the conveyance of the debtor's property without consideration or as to hinder, delay and defeat the creditor's claims. If the apartment house was the security upon which he relied for the extension of credit to the Oakford Realty Company, and it was fraudulently conveyed away for the purpose of defeating the claims of its subsequent creditors, and it had no other property, this should all be alleged in the bill and not in the prayer for relief. Having obtained his judgment it should be alleged that execution was not issued because there was no property of the defendant or judgment creditor upon which it might be levied. The bare allegation that the plaintiff has no adequate remedy at law will not confer jurisdiction. The bill must on its face show a case within the jurisdiction of a court of equity. *Miller's Equity Proc.*, 124; *Estep v. Watkins,* 1 Bland, 486, 489; *Grove v. Rentch,* 26 Md. 367, 377; *Becker v. Lipps,* 131 Md. 301, 305. The facts stated in the bill and in the prayers for relief, if all properly alleged in the bill, would clearly bring this case within a well recognized head of equity jurisdiction, namely, fraud.

It is evident in this case that the appellee ought to have an opportunity to amend his bill, and when this is done, as suggested in this opinion, the corporate defendants, the Oakford Realty Company and the Chatham-Parker Corporation, should be required to answer. We will, therefore, in accordance with General Equity Rule No. 31, reverse the order

overruling the demurrers of Eli Silberstein and Nathaniel Silberstein and dismiss the bill as to them; and reverse the order overruling the demurrers of the Oakford Realty Company and the Chatham-Parker Corporation, and remand the case so that the appellee may have the privilege of amending his bill as against them.

> *Order reversed as to all appellants and bill dismissed as to Eli Silberstein and Nathaniel Silberstein; and case remanded with leave to the appellee to amend his bill against the other defendants within such time as the court may determine, the appellee to pay the costs.*

PARKE, J., concurs in the conclusion.